IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

```
                                    )
THE QUEEN'S MEDICAL CENTER,         )
                                    )
                    Plaintiff,      )
                                    )
          vs.                       )   Civ. No. 12-00565 ACK-KSC
                                    )
KAISER FOUNDATION HEALTH PLAN,      )
INC., STRATOSE, INC., formerly      )
known as COALITION AMERICA,         )
INC., JOHN DOES 1-100, JANE DOES    )
1-100, DOE PARTNERSHIPS 1-100,      )
DOE CORPORATIONS 1-100, and DOE     )
ENTITIES 1-100,                     )
                                    )
                    Defendants.     )
                                    )
```

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT KAISER'S MOTION TO DISMISS UNDER RULE 12(b)(6), DENYING DEFENDANT KAISER'S MOTION TO DISMISS UNDER RULE (12)(b)(7), AND ORDER RE RULE 19 JOINDER**

**PROCEDURAL BACKGROUND**

This case arises from a dispute over a health maintenance organization's ability to take discounts on services provided by a hospital. On October 19, 2012, Plaintiff The Queen's Medical Center ("Plaintiff" or "Queen's") filed a Complaint against Defendants Kaiser Foundation Health Plan, Inc. ("Kaiser") and Stratose, Inc. (formerly known as Coalition America, Inc.)("Stratose"). ECF No. 1.

The Complaint alleges the following counts against Defendants: Count I - Breach of Contract Against Defendant

Kaiser, Count II - Intentional Misrepresentation, Fraud, and Fraudulent Concealment Against Kaiser, Count III - Negligent Misrepresentation Against Kaiser, Count IV - Intentional Misrepresentations Against Stratose, Count V - Negligent Misrepresentations Against Stratose, Count VI - Violations of RICO (18 U.S.C. §§ 1962(c) and 1964(c)) Against Kaiser and Stratose, Count VII - Unfair and Deceptive Trade Practices Against Kaiser and Stratose, Count VIII - Unjust Enrichment Against Kaiser, Count IX - Tortious Interference with Contractual Relations Against Kaiser and Stratose, and Count X - Promissory Estoppel or Equitable Estoppel Against Kaiser.  ECF No. 1 at 18-33.

On December 14, 2012, Kaiser filed a Federal Rule of Civil Procedure ("Rule") 12(b)(6) "Motion to Dismiss Plaintiff's Complaint for Failure to Join a Necessary Party and Motion for More Definite Statement" ("Motion to Dismiss").[1]  ECF No. 26. The Motion to Dismiss requests this Court to dismiss Counts 1, 2, 3, 6, 7, 9, and 10 for failure to state a claim under Rule 12(b)(6) and to dismiss the Complaint under Rule 12(b)(7) for

---

[1]  The docket reflects that Defendant Kaiser filed two motions to dismiss on December 14, 2012.  ECF Nos. 21 & 26. Kaiser filed several declarations on the docket in support of the first motion.  ECF Nos. 21-25.  However, Kaiser subsequently filed the second motion, the ECF No. 26 Motion to Dismiss, which included all of Kaiser's declarations.  ECF No. 26.  Because Defendants apparently intended for ECF No. 26 to supersede the previous documents, the Court deems ECF Nos. 21-25 to be withdrawn.

failure to join a necessary party under Rule 19.  Id at i-ii.

The Motion to Dismiss also contains a "Request for Judicial

Notice in Support of Motion to Dismiss."  ECF No. 26-12.  On

April 11, 2013, Plaintiff filed a Memorandum in Opposition to

Kaiser's Motion.  ECF No. 53.  On April 18, 2013, Kaiser

submitted its Reply in support of its Motion.[2/]  ECF No. 58.

Kaiser also filed an "Amended Declaration of Gary G. Grimmer in

Support of Defendant Kaiser's Reply for Motion to Dismiss."[3/]

ECF No. 62.  On April 24, 2013, Defendant Stratose filed a

"Joinder in Defendant Kaiser Foundation Health Plan Inc.'s Motion

to Dismiss Plaintiff's Complaint."[4/]  ECF No. 64.  On April 25,

---

[2/]  Kaiser filed another copy of its Reply on April 19, 2013, which appears to be identical to the Reply filed on April 18, 2013.  Compare ECF No. 58 with ECF No. 61.  The time stamp next to the attorney signature on ECF Nos. 58 and 61 reflects the same time.  Accordingly, the Court will consider the Reply that was timely filed on April 18, 2013.  ECF No. 58.

[3/]  Kaiser also filed a "Motion for Leave to File Under Seal" (Motion to Seal) requesting that various exhibits and an unredacted version of the Reply be filed under seal with this Court.  ECF No. 54.  The Court granted Kaiser's Motion to Seal while reserving the issue of whether or not to consider the exhibits for the Motion to Dismiss.  ECF No. 65.

[4/]  The Court determines that Defendant Stratose's Joinder is one of "simple agreement" with Kaiser's request for relief in the Motion to Dismiss.  Local R. of Practice for the U.S. Dist. Court for the Dist. of Haw. 7.9.  Under Local Rule 7.9, a party filing a joinder must "clearly state" that it seeks "the same relief sought by the movant for . . . itself . . . so that it is clear that the joinder does not simply seek relief for the original movant."  Because Stratose does not "clearly state" that the relief sought by Kaiser should also be applied to Stratose, the Court interprets Stratose's Joinder under Local Rule 7.9 as a
(continued...)

2013, Defendant Kaiser filed a "Reply Request for Judicial Notice in Support of Motion to Dismiss Complaint."  ECF No. 67.  On May 2, 2013, the Court held a hearing regarding this matter.  ECF No. 72.

Because the parties submitted numerous arguments regarding Kaiser's Motion to Dismiss, the Court provides the following Index as a guide to the issues discussed in this order:

### Index

Factual Background..........................................6

Standard...................................................10

Discussion.................................................12

    I. Whether This Court Should Consider Kaiser's Exhibits Attached to the Rule 12(b)(6) Motion to Dismiss.........12

    II. Whether This Court Should Dismiss Plaintiff's Count I – Breach of Contract Claim..............................20

        A. Whether Plaintiff Sufficiently Pleads a Claim for Breach of an Oral Contract.........................21

        B. Whether Plaintiff Sufficiently Pleads a Claim for Breach of an Implied Contract......................25

        C. Whether Haw. Rev. Stat. § 432D-8 Bars Plaintiff's Oral and Implied Contract Claims...................26

---

[4]/ (...continued)
simple agreement that relief should be granted to Kaiser.  <u>Id.</u>

-4-

D. Whether the Written Contracts Between Kaiser, Stratose, HMN, and Plaintiff Preclude Plaintiff's Breach of Oral and Implied Contract Claims..........31

E. Whether Plaintiff is Precluded as a Matter of Law from Using the Chargemaster Rates as the Price Term of a Medical Services Contract........................33

F. Whether the Patient Consent Forms Create a Contract Between Plaintiff and Kaiser.......................37

III. Whether This Court Should Dismiss Plaintiff's Count II - Intentional Misrepresentation, Fraud, and Fraudulent Concealment, Count III - Negligent Misrepresentation, and Count X - Promissory Estoppel or Equitable Estoppel Claims...............................................37

A. Whether Plaintiff Sufficiently Pleads Fraud Regarding the Remittance Advice Forms and the June 20, 2012 and August 30, 2012 Letters...................39

B. Whether Plaintiff Sufficiently Pleads Fraud Regarding Kaiser's Oral Statements in January 2012..44

C. Whether Plaintiff Sufficiently Pleads a Claim for Fraudulent Nondisclosure...........................47

D. Whether Plaintiff Sufficiently Pleads a Claim for Negligent Misrepresentation........................50

E. Whether Plaintiff Sufficiently Pleads a Claim for Promissory Estoppel or Equitable Estoppel...........51

IV. Whether This Court Should Dismiss Plaintiff's Count VI -
Violations of RICO (18 U.S.C. §§ 1962(c) and 1964(c))
Claim....................................................52

V. Whether This Court Should Dismiss Plaintiff's Count VII -
Unfair and Deceptive Trade Practices Claim..............66

VI. Whether This Court Should Dismiss Plaintiff's Count IX -
Tortious Interference With Contractual Relations Claim...68

VII.  Whether This Court Should Order Plaintiff to Join HMN
as a Necessary Party to This Lawsuit....................70

Conclusion..................................................73

### FACTUAL BACKGROUND[5/]

According to the standard for deciding a Federal Rule
of Civil Procedure 12(b)(6) motion to dismiss, the Court uses
Plaintiff's Complaint to establish the factual background to
decide this motion.  See Sateriale v. R.J. Reynolds Tobacco Co.,
697 F.3d 777, 783 (9th Cir. 2012).

In 1996, Plaintiff and Kaiser entered into a Services
Agreement where Plaintiff agreed to provide hospital services to
patients who were members of one or more of Kaiser's health
plans.  Compl. at 5, ¶ 9.  Under this agreement, Plaintiff agreed
to provide certain discounts for hospital services to Kaiser and

---

[5/]   The facts as recited in this order are for the purpose
of disposing of the current motion and are not to be construed as
findings of fact that the parties may rely on in future
proceedings.

its members.  Id.  The Services Agreement was set to expire on December 31, 2011; upon expiration, Kaiser would be obligated to pay 100% of the billed charges for hospital services provided to its members and would no longer receive discounts.  Compl. at 5 ¶ 10.

Before the Services Agreement expired on December 31, 2011, Plaintiff and Kaiser attempted to negotiate a new written contract or extension of the Services Agreement.  Compl. at 5 ¶ 11.  During the discussions between Plaintiff and Kaiser in 2011-2012, Plaintiff's employees stated, and Kaiser's employees acknowledged, that Kaiser would not be able to take discounts on Plaintiff's services.  Compl. at 6, ¶ 12-13.  Plaintiff explicitly told Kaiser that Kaiser would not receive discounts for services unless a new written contract between them was agreed upon and signed.  Id at 6, ¶ 13.  Without a contract, Kaiser would need to pay 100% of the billed charges for Plaintiff's services to Kaiser patients.  Id.  Kaiser and its employees stated that they understood and agreed that Kaiser would need to pay 100% of the billed charges after the Services Agreement expired.  Id at 7, ¶ 14.

Specifically, during a meeting held sometime around December 13, 2011, Plaintiff's employees stated that Kaiser would need to pay 100% of the billed charges for services, and Kaiser employees stated they understood that no discounts would be

-7-

available without a new contract.  Compl. at 7, ¶ 15.  Plaintiff

subsequently sent an email to Kaiser confirming that payments

would "revert to 100% of charge" for services provided to Kaiser

patients without a new written agreement.  Id at ¶ 16.  Kaiser

did not reply to this e-mail.[6/]  Id.  Kaiser did not express any

disagreement with Plaintiff's communications regarding the

pricing arrangement.  Id.  Plaintiff had similar conversations

with Kaiser in January 2012 regarding bill charges and expected

payment, and Kaiser gave "direct, verbal agreement that Kaiser

would pay 100% of [the] billed charges."  Id at 9, ¶ 19.

During the negotiations in 2011 and 2012 before the

expiration of the Services Agreement, Kaiser did not tell

Plaintiff of Kaiser's intention to claim discounts through an

agreement with Defendant Stratose, a "re-pricing" service that

Kaiser contracted with sometime in 2007.  Compl. at 10, ¶ 23.

The Services Agreement between Plaintiff and Kaiser expired on

December 31, 2011.  Id. at 11, ¶ 26.

Kaiser continued to send patients to Plaintiff's

facilities for medical services after the Services Agreement

expired, and Plaintiff continued to treat Kaiser's patients.

Compl. at 9 ¶ 21, 11 ¶¶ 28-29.  Before each Kaiser patient was

---

[6/]  On August 30, 2012, Kaiser admitted in writing that oral
and written correspondence from Plaintiff included "unilateral
statements made by Plaintiff of Plaintiff's desire to charge or
bill at 100% of the billed charges."  Id at 8, ¶ 17.

admitted or treated, the patient had to sign a form entitled "Consent To Treatment and Terms And Conditions of Service" ("Patient Consent Form"). <u>Id.</u> The Patient Consent Form required each patient to agree that Plaintiff's bill must be paid in full within 30 days of treatment. <u>Id.</u> Furthermore, the Patient Consent Form stated that each Kaiser patient assigned his or her insurance benefits to Plaintiff and provided authorization for Plaintiff to bill the patient's insurance carrier for the full charges due. <u>Id.</u>

During January 2012 and February 2012, Kaiser paid Plaintiff for 100% or nearly 100% of the billed charges. <u>Id</u> at 11, ¶ 31. Around March 2012, Kaiser started to take discounts on Plaintiff's services by paying less than 100% of the billed charges. <u>Id</u> at 12, ¶ 32. In connection with the discounts, Kaiser issued Remittance Advice forms to Plaintiff reflecting discounted rates. <u>Id</u> at 12, ¶ 33. The Remittance Advice forms were also accompanied by forms sent by Defendant Stratose entitled "Payor Repricing Transmittal." <u>Id</u> at 12, ¶ 34. The Payor Repricing Transmittal forms stated that a discounted price in the form of a "Network Allowance" allowed Kaiser to pay less than Plaintiff's stated charges. <u>Id</u> at 12, ¶ 34. Additionally, the Payor Repricing Transmittal forms stated as follows: "Payment being made in accordance with HMN/RAN/AMN discount rate agreement." <u>Id</u> at 13, ¶ 34. Plaintiff did not know about

Defendant Stratose until after receipt of the Payor Repricing Transmittal forms.  Id at 13, ¶ 35.

Also around March 2012, Plaintiff asked Kaiser about the re-pricing arrangement between Stratose and Kaiser.  Id at 13, ¶ 37.  In April 2012, Plaintiff demanded that Kaiser submit documentation explaining Kaiser's relationship with Stratose.  Id at 14, ¶ 38.  Kaiser refused to provide any contracts and resisted Plaintiff's requests for documentation supporting the legitimacy of Kaiser's discounts via Stratose.  Id at 14, ¶¶ 39-41.  Instead, Kaiser claimed that its contract with Stratose was "proprietary and confidential."  Id at 39, ¶ 41.  Around August 30, 2012, Kaiser disclosed to Plaintiff a letter from Stratose to Kaiser stating that Stratose obtained the discounted prices from Health Management Network, Inc. ("HMN"), a corporation that had signed a Participating Hospital Agreement ("PPO Agreement") with Plaintiff effective July 1, 2005.  Id at 15, ¶¶ 42-43.  According to Plaintiff, Stratose and Kaiser do not qualify to receive discounts under the PPO Agreement.  Id at 16, ¶¶ 47-49.  Plaintiff alleges around $4 million of damages as a result of Kaiser's improper discounts.  Id at 18.

### STANDARD

Federal Rule of Civil Procedure ("Rule") 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  The Court may dismiss

a complaint either because it lacks a cognizable legal theory or because it lacks sufficient factual allegations to support a cognizable legal theory.  Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011).

On a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party.  Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 783 (9th Cir. 2012) (citation omitted).  The complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  However, "to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(holding that a "formulaic recitation of the elements of a cause of action" will not defeat a motion to dismiss).  Instead, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  Starr, 652 F.3d at 1216.

"The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a

defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556-57).  However, in considering a motion to dismiss, "the court is not deciding whether a claimant will ultimately prevail but rather whether the claimant is entitled to offer evidence to support the claims asserted."  Tedder v. Deutsche Bank Nat. Trust Co., 863 F. Supp. 2d 1020, 1030 (D. Haw. 2012) (citing Twombly, 550 U.S. at 563 n.8).

The Court should grant leave to amend "even if no request to amend the pleading was made, unless it determines that the pleading could not be cured by the allegation of other facts." OSU Student Alliance v. Ray, 699 F.3d 1053, 1079 (9th Cir. 2012).

## DISCUSSION

## I. Whether This Court Should Consider Kaiser's Exhibits Attached to the Rule 12(b)(6) Motion to Dismiss.

As a preliminary matter, the Court addresses Kaiser's request for the Court to consider Exhibits 1 - 7 of Kaiser's Motion to Dismiss and Exhibits 8 - 14 of Kaiser's Reply.  Def. Kaiser's Mtn. to Dismiss at 5 n.1, ECF No. 26; Def. Kaiser's Request for Judicial Notice at 2-3, ECF No. 26-12.

Under Rule 12(d), if "matters outside the pleadings are presented to and not excluded by the court," a Rule 12(b)(6)

motion to dismiss must be converted into a motion for summary judgment under Rule 56.  If the Court converts a motion to dismiss into a motion for summary judgment, then "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

However, under the "incorporation by reference" doctrine in the Ninth Circuit, "a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment."  Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1160 (9th Cir. 2012).  The doctrine may be applied to "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading."  Id.  If the document is incorporated, the court "may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."  Id at 1160.

The Ninth Circuit has extended the "incorporation by reference" doctrine to situations in which a plaintiff does not explicitly allege the contents of the document if "the plaintiff's claim depends on the contents of [the] document" and the parties do not dispute the document's authenticity.  Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).  The doctrine is

-13-

intended to prevent plaintiffs from "surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998).

As noted in Rule 12(d), if a court considers documents external to the complaint, the motion to dismiss should be converted into a summary judgment motion so that the plaintiff has a fair chance to respond. Accordingly, when determining whether to use the doctrine of incorporation, a court should consider whether the plaintiff has fair notice. In a case where "an attached document is integral to plaintiff's claims and its authenticity is not disputed, the plaintiff "obviously is on notice of the contents of the document and the need for a chance to refute evidence is greatly diminished." Parrino, 146 F.3d at 706 n.4. The Ninth Circuit has held that "the district court may, but is not required to incorporate documents by reference" when deciding a motion to dismiss. Davis, 691 F.3d at 1159.

In this case, the Court exercises its discretion to only incorporate Exhibit 9, which is the PPO Agreement between HMN and Plaintiff dated July 1, 2005. Dec. of Grimmer, Ex. 9, ECF No. 71. Plaintiff specifically references this document in the Complaint to argue that Kaiser is not entitled to take discounts for Plaintiff's services. Compl. at ¶¶ 42, 43, 45, 47. Because part of Plaintiff's claims depend upon this document

-14-

(i.e. to show that Kaiser and Stratose are not entitled to discounted prices), the Court considers the PPO Agreement in conjunction with Kaiser's Motion to Dismiss.  See Davis, 691 F.3d at 1160.

However, the Court declines to consider Kaiser's other exhibits with the Motion to Dismiss because considering these exhibits would not align with the rationales of the doctrine of incorporation by reference.  Furthermore, the Court observes that Kaiser attempts to use these exhibits to raise affirmative defenses to Plaintiff's claims.  An affirmative defense is one that raises "matters extraneous to the plaintiff's prima facie case."  In re Rawson Food Serv., Inc. v. Rawson Food Serv., Inc., 846 F.2d 1343, 1349 (11th Cir. 1988).[7/]  A court may not grant a Rule 12(b)(6) motion to dismiss based upon an affirmative defense unless the defense raises no disputed issues of fact.  Scott v. Kuhlmann, 746 F.2d 1377, 1378 (9th Cir. 1984).  However, as discussed throughout this order, Kaiser uses the attached exhibits to raise disputed issues of fact that the Court declines to consider for a Rule 12(b)(6) motion to dismiss.

Exhibits 1-4 are documents that explain Kaiser's contract terms and benefits for the members participating in its

---

[7/]  The Ninth Circuit cited the Rawson Food Service case when discussing the nature of an affirmative defense.  Zivkovic v. Southern California Edison Co., 302 F.3d 1080, 1088 (9th Cir. 2002).

medical plan.  Def. Kaiser's Mtn. to Dismiss, Ex. 1 (Kaiser Group Medical and Hospital Service Agreement), Ex. 2 (Kaiser's Group Plan Benefit Schedule), Ex. 3 (Kaiser Non-Group Medical and Hospital Service Agreement), Ex. 4 (Kaiser 20/Rx Plan Benefit Schedule), ECF Nos. 26-5, 26-6, 26-7, 26-8.  As noted above, the doctrine of incorporation by reference is intended to prevent plaintiffs from "deliberately omitting references to documents upon which their claim is based."  Parrino, 146 F.3d at 706. Plaintiff's claim does not appear to be primarily based upon these documents, and Plaintiff probably did not have easy access to these contracts because they belong to Kaiser.  The Court therefore concludes that Plaintiff did not deliberately omit these documents from the Complaint because Plaintiff did not have reasonable access to them, and there is no basis to incorporate them as part of the Complaint.  C.f. Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1279 (9th Cir. 1999) (noting that the court could fairly consider SEC filings for a motion to dismiss because plaintiff had expressly stated in the complaint that plaintiff had reviewed the filings).

With respect to Exhibits 5 and 6, which are respectively a Client Services Agreement and a Participating Plan Agreement between Kaiser and Coalition America, Inc. ("Kaiser-Stratose Contract"), Plaintiff specifically stated in the Complaint that Kaiser refused to disclose these contracts to

Plaintiff before the Complaint was filed.  Compl. at 14 ¶¶ 39-41; Def. Kaiser's Mtn. to Dismiss, Ex. 5, ECF No. 26-9, Ex. 6, ECF No. 26-10.  Notice to Plaintiff is an important consideration in both Rule 12(d) and the doctrine of incorporation by reference. Parrino, 146 F.3d at 706 n.4.

In this case, while Plaintiff believed that a contract between Kaiser and Stratose existed at the time when the Complaint was filed, Plaintiff did not have notice of the contents of that contract.  Compl. at 14, ¶¶ 39-41.  Defendants refused to provide the contracts before Plaintiff filed the Complaint; therefore, Plaintiff could not have deliberately omitted the Kaiser-Stratose Contract from said Complaint.  See Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006)(court declined to consider a letter created after plaintiff's complaint was filed).  Moreover, allowing Defendant Kaiser to spring an incomplete contract upon Plaintiff in a Motion to Dismiss would run contrary to the notice rationale underlying the doctrine of incorporation by reference.

Plaintiff also contests the use of the Kaiser-Stratose Contract in deciding Kaiser's Motion to Dismiss because Kaiser "attaches only three pages of this purported contract to its motion."[8/]  Plntf.'s Opp. at 11.  In addition to the above

---

[8/]  The Court is puzzled as to why Kaiser failed to attach the entire Kaiser-Stratose Contract when the terms are apparently
(continued...)

reasons, the Court exercises its discretion to decline to incorporate only part of the Kaiser-Stratose Contract when the entire document may be important in deciding the issues in this case.  <u>Davis</u>, 691 F.3d at 1159.

Exhibits 7 and 14 are website pages explaining the relationship between HMA and HMN.  Def. Kaiser's Mtn. to Dismiss, Ex. 7, ECF No. 26-11, Reply Request for Judicial Notice at 3, Ex. 14, ECF No. 67.  The Complaint neither references this website nor relies on the information found on the website.  <u>See generally</u>, Compl.  Accordingly, the website is outside of the pleadings, and this Court would need to convert the Motion to Dismiss into a motion for summary judgment, which the Court is not inclined to do.

Regarding Exhibit 11A, the Court declines to consider the client lists at this phase of the proceedings.  Kaiser attempts to use the lists to argue that it falls within the PPO Agreement between Plaintiff and HMN.  Def. Kaiser's Mtn. to Dismiss at 1, 8, 9, 17, 19, 23.  However, Kaiser's argument raises issues of fact, and the Court would need to evaluate other evidence in conjunction with the client lists in order for the lists to be helpful in deciding the issues of this case.  <u>See</u> Compl. at 15-16 <u>and</u> <i>infra</i> at 32-33.  The Court is not inclined to

_____

[8]/ (...continued)
an important part of Kaiser's argument.

resolve factual disputes for this Motion to Dismiss, so the Court declines to evaluate the client lists.  Davis, 691 F.3d at 1159 (noting that district court is not required to incorporate documents into the complaint).

Lastly, Defendant Kaiser acknowledges that it could not produce Exhibit 13, which is a contract between HMN and Stratose's predecessor, for the Motion to Dismiss because Kaiser did not receive the contract from Stratose in time to attach it to the Motion.  Def. Kaiser's Mtn. to Dismiss at 5 n.1. Plaintiff did not have notice of the contents of this document when drafting the Complaint because Plaintiff did not receive it until after this litigation commenced.  See Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006).  Accordingly, the Court declines to consider this document for the Motion to Dismiss because Plaintiff did not have sufficient notice of the contents of the document.

The Court also denies Kaiser's Request for Judicial Notice as to Exhibits 1-7, 11, 11A, 13, and 14 for the following additional reasons.

In the context of a motion to dismiss, a court may take judicial notice under Fed. R. Evid. 201 of "matters of public record" without converting the motion to dismiss into a motion for summary judgment.  Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).  However, a court may not take judicial

-19-

notice of a fact that is "subject to reasonable dispute."  Id at 689.

Kaiser fails to explain how the Exhibits are matters of public record under Fed. R. Evid. 201.  Furthermore, Kaiser attempts to use these Exhibits to establish facts that are subject to reasonable dispute (i.e., whether Kaiser qualifies for discounts under the PPO Agreement between Plaintiff and HMN).  This Court may not, under Ninth Circuit law, take notice of such facts when deciding a motion to dismiss.  See U.S. v. Corinthian Colleges, 655 F.3d 984, 998-99 (9th Cir. 2011)("we may not, on the basis of evidence outside of the Complaint, take judicial notice of facts favorable to Defendants that could reasonably be disputed").  Accordingly, the Court denies Kaiser's request to take judicial notice of Exhibits 1-7, 11, 11A, and 14.

**II.   Whether This Court Should Dismiss Plaintiff's Count I - Breach of Contract Claim.**

In Count I of the Complaint, Plaintiff alleges that an oral contract was formed between Plaintiff and Kaiser when (1) Plaintiff offered to continue to provide health care services and (2) Kaiser acknowledged and/or agreed to the terms, verbally accepted the offer and sent its patients to Plaintiff's facilities, and paid 100% of the billed amounts for January and February of 2012.  Compl. at 18, ¶ 58.

**A. Whether Plaintiff Sufficiently Pleads a Claim for Breach of an Oral Contract.**

Under Hawai'i law, an oral contract must contain the following elements in order for it to be enforceable: (1) an offer, (2) an acceptance, and (3) consideration.  Douglass v. Pflueger Hawaii, Inc., 110 Hawai'i 520, 525 (2006).  Plaintiff sufficiently pleads an oral contract based on the following allegations: (1) the offer - Plaintiff offered to continue to provide healthcare services in exchange for Kaiser's agreement to reimburse Plaintiff for 100% of the billed charges (Compl. at 18 ¶ 58), (2) acceptance - Kaiser acknowledged that it would need to pay 100% of the billed charges for services provided by Plaintiff (Compl. at 7, ¶¶ 15, 18, 19), and (3) consideration - Plaintiff would provide services in exchange for Kaiser's payment (Compl. at 7, ¶ 15).

Kaiser argues that any oral statement of acceptance by Kaiser is uncertain and non-promissory.  Def. Kaiser's Mtn. to Dismiss at 14.  Kaiser appears to confuse the legal requirement that a contract's terms must be reasonably certain with the standard for a valid acceptance.  Under Earl M. Jorgenson Co. v. Mark Const., Inc., the existence of mutual assent or intent to accept "is determined by an objective standard." 56 Haw. 466, 470 (1975).  "A party's words or acts are judged under a standard of reasonableness in determining whether he has manifested an

objective intention to agree.  All reasonable meanings will be imputed as representative of a party's corresponding objective intention."[9/]  <u>Id.</u>  The question of whether Kaiser manifested an objective intention to agree is a question of fact that should be construed in favor of Plaintiff.  <u>See</u> <u>Island Directory Co., Inc. v. Iva's Kinimaka Enter., Inc.</u>, 10 Haw. App. 15, 23 (Haw. Ct. App. 1993).  In the Complaint, Plaintiff specifically alleges that Kaiser provided "direct, verbal agreement that Kaiser would pay 100% of billed charges going forward."  Compl. at 9 ¶ 19. Additionally, the Complaint alleges that Kaiser in fact reimbursed Plaintiff for 100% or nearly 100% of the billed charges for January and February of 2012.  Compl. at 11 ¶ 31. Under the standard for a motion to dismiss, the Court must accept Plaintiff's factual allegations in the Complaint as true and construe them in the light most favorable to Plaintiff. <u>Sateriale</u>, 697 F.3d at 783.  As a result, the Court finds that Plaintiff sufficiently pled the acceptance element for an oral contract.

Kaiser also argues that any oral contract between Kaiser and Plaintiff is unenforceable because Kaiser's silence as to Plaintiff's billing terms cannot constitute acceptance.  Def. Kaiser's Mtn. to Dismiss at 13 (citing Restatement (Second) of

---

[9/]  Kaiser's citation to Restatement (Second) of Contracts § 26 (1981) is about the requirements for an offer, not acceptance. <u>See</u> Restatement (Second) of Contracts § 26 (1981).

Contracts § 69 (1981)).  However, Plaintiff does not merely rely upon silence; as explained above, Plaintiff alleges specific affirmative acts on the part of Kaiser that may constitute acceptance.  Compl. at 7 ¶ 15, 9 ¶ 19, 11 ¶ 31.

Kaiser's next argument is that the contract fails because Plaintiff has too much power to "set a price for future care without regard to the reasonableness of the CDM[10/] rates or other market-based criteria."  Def. Kaiser's Mtn. to Dismiss at 15.  However, Kaiser's own cited case states that, "the fact that the contract permits one party to set or change the price charged for goods or services does not render the contract illusory."[11/]

_____

[10/]  CDM rates stands for "charge-description-master" rates, which are apparently the rates hospitals charge for patients who do not have a contract for discounted services.  Def. Kaiser's Mtn. to Dismiss at 2.  The parties and other court cases also refer to these rates as "chargemaster" rates.  See Plntf.'s Opp. at 14; Allen v. Clarian Health Partners, 980 N.E.2d 306, 310 (2012).

[11/]  Kaiser cites to Douglass v. Pflueger Hawaii, Inc., 110 Hawai'i 520, 535 (2006) to support the proposition that a party's power to change the price renders a contract illusory.  However, Douglass, which involved an arbitration clause, does not support Kaiser's proposition because (1) the employee handbook that contained the clause specifically stated that it was not a contract and (2) the arbitration provision was held illusory because the employer could change its own obligation to arbitrate at any time.  Douglass, 110 Hawai'i at 535.  In other words, the employer in Douglass made an illusory promise because the employer could choose whether or not to be bound by the arbitration clause.  In contrast, the contract between Plaintiff and Kaiser is not illusory because Plaintiff without qualification offered consideration, i.e. the obligation to provide medical services.  Compl. at 8, ¶ 18.  The fact that the pricing term is disputed does not render Plaintiff's

(continued...)

-23-

Perdue v. Crocker National Bank, 38 Cal. 3d 913, 923 (1985).  The California Supreme Court noted that, "a contracting party's discretionary power to vary the price or other performance does not render the agreement illusory if the party's *actual* exercise of that power is reasonable."  Id.  The question of whether Plaintiff's billed charges are reasonable is a question of fact that should not be decided on a motion to dismiss because Plaintiff's rates would need to be compared to other comparable entities in the health services market.  Accordingly, Kaiser's factual challenge does not render Plaintiff's claim legally invalid.  See Corinthian Colleges, 655 F.3d at 998-99.

Kaiser also argues that any oral contract between Kaiser and Plaintiff to pay the billed rate fails for lack of consideration because Plaintiff is obligated to provide services for emergency room ("ER") patients under federal law.  Def. Kaiser's Mtn. to Dismiss at 15.  However, assuming that Kaiser's argument is true, Plaintiff's claim survives Kaiser's Motion to Dismiss because it is primarily based on billed charges for *non*-ER patients.  Plntf.'s Opp. at 13 n.4.  Consideration is defined as "a bargained for exchange whereby the promisor receives some benefit or the promisee suffers a detriment."  Young v. Allstate Ins. Co., 119 Hawaii 403, 428-29 (2008).  In this case, Plaintiff

---

[11]/ (...continued)
consideration invalid or make the contract illusory.

alleged a bargained for exchange with respect to non-ER patients - medical services in exchange for payment.  Compl. at 8, ¶ 18. Accordingly, because Plaintiff has presented a plausible claim as to the non-ER patients, Plaintiff's breach of contract claim should not be dismissed.  See Moss, 572 F.3d at 969 ("A claim has facial plausibility . . . when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

**B. Whether Plaintiff Sufficiently Pleads a Claim for Breach of an Implied Contract.**

Under Hawai'i law, an implied contract is formed when "the intention of the parties is not express, but an agreement in fact, creating an obligation, is implied or presumed from their acts, as in the case where a person performs services for another, who accepts the same . . . or where a person performs services for another on request." Durette v. Aloha Plastic Recycling, Inc., 105 Hawai'i 490, 504 (2004).

In this case, Plaintiff alleges that it performed services for Kaiser in the form of providing medical services for Kaiser's patients with the understanding between both parties that Kaiser would pay 100% of the billed charges.  Compl. ¶¶ 13-15, 18-19, 21, 27-28,30-31.  Plaintiff also alleges that Kaiser paid Plaintiff for 100% or nearly 100% of the billed charges for January and February of 2012.  Compl. at 11 ¶ 31.  Accordingly,

-25-

Plaintiff has sufficiently pleaded the elements for an implied contract.

**C. Whether Haw. Rev. Stat. § 432D-8 Bars Plaintiff's Oral and Implied Contract Claims.**

Kaiser argues that Haw. Rev. Stat. § 432D-8 bars enforcement of an alleged oral or implied contract between Plaintiff and Kaiser because the contract "is not in writing." Def. Kaiser's Mtn. to Dismiss at 3.  However, the Court does not agree with Kaiser's interpretation of the statute.

The statute does contain language that a contract between a health maintenance organization (like Kaiser) and a participating provider of health care services (like Plaintiff) "shall be in writing."  Haw. Rev. Stat. (H.R.S.) § 432D-8 (2005). However, the statute further states as follows: "In the event that a contract with a participating provider has not been reduced to writing as required by this subsection . . . the participating provider shall not collect or attempt to collect *from the subscriber*[12/] *or enrollee*[13/] sums owed by the health maintenance organization."  Id (emphasis added).  The statute

_____

[12/]  A "subscriber" is defined as "an individual whose employment or other status, except family dependency, is the basis for eligibility for enrollment in the health maintenance organization, or in the case of an individual contract, the person in whose name the contract is issued."  H.R.S. § 432D-1.

[13/]  An "enrollee" is defined as "an individual who is covered by a health maintenance organization."  H.R.S. § 432D-1.

does not bar a participating provider from attempting to collect the amounts owed from the health maintenance organization itself. Id.

Under Hawaiʻi law, a court "must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose." Franks v. City and Cnty. of Honolulu, 74 Haw. 328, 334 (1993).  Additionally, "the fundamental starting point is the language of the statute itself and where the statutory language is plain and unambiguous, the [courts'] sole duty is to give effect to its plain and obvious meaning." Leslie v. Bd. of Appeals of Cnty. of Hawaii, 109 Haw. 384, 393 (2006).  However, a court is allowed to depart from the literal construction of a statute "if such a construction yields an absurd and unjust result obviously inconsistent with the purposes and policies of the statute." Id at 393.  Moreover, the Hawaiʻi Supreme Court has noted that courts should "give effect to all parts of a statute, and that no . . . word shall be construed as superfluous, void, or insignificant." Franks v. City and Cnty. of Honolulu, 74 Haw. 328, 338 (1993).

The Court declines to adopt Kaiser's interpretation for various reasons.  The Hawaiʻi legislature in H.R.S. § 432D-1 clearly indicated that a participating provider under the statute may have an "implied contract" with a health maintenance organization.  In H.R.S. § 432D-1, the definitions section

-27-

applicable to § 432D-8, a "Participating Provider" is defined as "a provider . . . who, under an express or *implied* contract with the health maintenance organization or its contractor or subcontractor, has agreed to provide health care services to enrollees with an expectation of receiving payment . . . directly or indirectly from the health maintenance organization." H.R.S. § 432D-1 (2005) (emphasis added). By reading § 432D-1 *in pari materia* with § 432D-8, the Court concludes that the Hawaiʻi legislature did not intend to eliminate the enforcement of an implied contract between a participating provider and a health maintenance organization. For the Court to hold that only written contracts are valid would render the "implied contract" phrase in § 432D-1 meaningless because § 432D-8 would bar the enforcement of such an implied contract. The Court declines to adopt an interpretation that would render a statutory term superfluous. See Franks v. City and Cnty. of Honolulu, 74 Haw. 328, 338 (1993).

Instead, the Court concludes that, while the statute prevents a participating provider from enforcing a non-written contract against a *subscriber or enrollee*, the statute does not preclude a participating provider from enforcing a non-written contract against the health maintenance organization. Based upon the language of the statute, the legislature intended to protect the consumer subscribers or enrollees in health plans from being

-28-

sued by participating providers in the event that a health maintenance organization failed to pay its bills.  H.R.S. § 432D-8.  The legislature contemplated a scenario where a contract is not reduced to writing and therefore set a clear consequence for such cases - a participating provider would be barred from seeking relief from subscribers or enrollees.  H.R.S. § 432D-8.

However, the legislature did not prohibit participating providers from suing the actual health maintenance organization for amounts due, which the legislature could have easily added to this section of the statute.  Under the doctrine of *expressio unius est exclusio alterius*, "expressing one item of [an] associated group or series excludes another left unmentioned." Chevron U.S.A. Inc. v. Echazabal, 536 U.S. 73, 80 (2002); cf. Kaleikini v. Thielen, 124 Hawaiʻi 1 at 35 (2010) (applying the doctrine of *expressio unius* to a Hawaiʻi statute).  The associated group in this case is composed of (1) health maintenance organizations, (2) subscribers, and (3) enrollees. H.R.S. § 432D-8.  These three entities share the common factor of potential payment liability to a participating provider for services rendered.  Id.  The legislature's decision not to include health maintenance organizations in the statutory list under these circumstances demonstrates that the statute allows

participating providers to pursue the health maintenance organization for amounts due under an oral or implied contract.[14]

In this case, Kaiser is a health maintenance organization, and Plaintiff is a participating provider.  While the consumer protection function of H.R.S. § 432D-8 would prevent Plaintiff from seeking payment from consumer subscribers or enrollees in Kaiser's health plans, Hawaiʻi law does not prohibit Plaintiff from seeking payment from Kaiser for the violation of an oral or implied contract.[15]

---

[14]   The legislative history of H.R.S. § 432D also supports the Court's conclusion.  The Hawaiʻi legislature emphasizes the consumer protection purpose of the statute, but provides no discussion about the differences between written and non-written contracts.  S. Stand. Comm. 18-884, Reg. Sess., at 1161 (Haw. 1995) ("Supporters were interested in . . . protecting the consumers enrolled in these plans from losses."); H. Rep. SC 18-168, Reg. Sess., at 1091 (Haw. 1995) ("The public has a vital interest in the fiscally sound, efficient, and ethical operation of HMOs."); S. Conf. Comm. 21-27, Reg. Sess., at 861-62 (Haw. 2001) ("The purpose of this measure is to enhance consumer protection . . .").  The Court may therefore reasonably conclude that the purpose of the writing requirement in H.R.S. § 432D is to protect consumers as opposed to barring contract enforcement for health maintenance organizations who fail to pay their bills.

[15]   Kaiser argued at the hearing that the Court should interpret H.R.S. § 432D-8 to bar the enforcement of oral or implied contracts in order to avoid disputes over the existence and terms of such contracts as illustrated by the current case.  However, as explained above, the legislative history demonstrates that the Hawaiʻi legislature primarily focused on consumer protection, not litigation disputes between sophisticated health organizations over the terms of their contracts.  *Supra* at 30 n.14.  Accordingly, for the reasons stated above, the Court interprets § 432D-8 as a consumer protection measure instead of a categorical bar on oral and implied contracts.

**D. Whether the Written Contracts Between Kaiser, Stratose, HMN, and Plaintiff Preclude Plaintiff's Breach of Oral and Implied Contract Claims.**

Kaiser's next group of arguments involves a set of contracts between Plaintiff, HMN, Kaiser, and Stratose. Kaiser first contends that Plaintiff fails to state a claim for breach of contract because Plaintiff does not identify the contract term in the Queen's-HMN PPO Agreement that has been breached. Def. Kaiser's Mtn to Dismiss at 9. However, Plaintiff's breach of contract argument is premised on a contract between Plaintiff and Kaiser, not between Plaintiff and HMN. Compl. at 18-19, ¶¶ 58-59. Therefore, the crux of Kaiser's argument appears to be that the written contracts (the PPO Agreement, the Stratose-HMN Contract, and the Kaiser-Stratose Contract) foreclose Plaintiff's oral and implied contract claims.

Kaiser asserts that the existence of a written contract allowing Kaiser to discount Plaintiff's charges would supersede any oral or implied contract stating otherwise. Def. Kaiser's Mtn. to Dismiss at 10. Kaiser cites to Gianaculas v. Trans World Airlines, Inc., which states "there cannot be a valid express contract and an implied contract each embracing the same subject, but requiring different results." 761 F.2d 1391, 1394 (9th Cir. 1985); cf. Porter v. Hu, 116 Hawaiʻi 42, 54 (Haw. Ct. App. 2007) (stating that "an action for unjust enrichment cannot lie in the

face of an express contract").  Kaiser argues that the PPO Agreement, the Stratose-HMN Contract, and the Kaiser-Stratose Contract allow Kaiser to take the discounts, and that this contractual arrangement supersedes any agreement that Kaiser might have made with Plaintiff to pay 100% of the billed charges. Def. Kaiser's Mtn. to Dismiss at 8-9.

First, the Court has already determined that it will not consider the Stratose-HMN Contract or the Kaiser-Stratose Contract in ruling on this Motion to Dismiss.  Furthermore, the Court determines that Kaiser's argument is an affirmative defense to Plaintiff's claim for an oral or implied contract because it raises matters "extraneous to the plaintiff's prima facie case." In re Rawson Food Serv., 846 F.2d at 1349.  The Ninth Circuit has held that a motion to dismiss under Rule 12(b)(6) cannot be granted based upon an affirmative defense unless that defense "raises no disputed issues of fact."  Scott, 746 F.2d at 1378. In this case, Kaiser's defense in the form of the written contracts is extraneous to whether Plaintiff sufficiently alleged a breach of oral or implied contract claim; additionally, this affirmative defense raises disputed issues of fact because the Court would need to evaluate various contract terms and decide whether the parties meet the requirements of the terms.[16]

---

[16]   For instance, there are factual disputes between the parties as to whether Stratose and Kaiser qualify as "Payors"
(continued...)

-32-

Accordingly, the Court declines to consider this defense in deciding Defendants' Motion to Dismiss.  See Corinthian Colleges, 655 F.3d at 998-99.

> **E. Whether Plaintiff is Precluded as a Matter of Law from Using the Chargemaster Rates as the Price Term of a Medical Services Contract.**

Kaiser next argues that, if the string of written contracts between Queen's, HMN, Stratose, and Kaiser do not give Kaiser the right to take discounts for Plaintiff's services, then 42 U.S.C. § 1395dd, Haw. Adm. Rules § 11-93-10, Medicare laws, and case law allows Kaiser to pay only reasonable charges.  Def. Kaiser's Mtn. to Dismiss at 10-11.  Kaiser appears to apply this argument to two different groups - ER patients and non-ER patients.  Def. Kaiser's Mtn. to Dismiss at 10-11.  The Court is not convinced that Kaiser's argument warrants dismissal of Plaintiff's claim.

For ER patients, Kaiser argues that Plaintiff must treat such patients who arrive at the hospital regardless of the patients' ability to pay.  Def. Kaiser's Mtn. to Dismiss at 10 (citing Emergency Medical Treatment & Active Labor Act ("EMTLA"),

---

[16/] (...continued)
under the PPO Agreement, as well as whether HMN could properly assign any interest in the discounts to Stratose and Kaiser.  Compare Compl. at 15-16, ¶¶ 45-47 with Def. Kaiser's Mtn. to Dismiss at 8-9; Def. Kaiser's Mtn. to Dismiss at 9; Dec. of Grimmer Ex. 9 at 12.

42 U.S.C. § 1395dd(a); Haw. Admin. Rules (HAR) §§ 11-91-10).

Plaintiff argues that the Complaint alleges damages for Kaiser's failure to pay billed charges for non-ER patients; additionally, the damages listed in the Complaint already exclude certain emergency room services. Plntf.'s Opp. at 13 n.4 (citing Plntf.'s Initial Disclosures at 6 n.1, ECF No. 37). Accordingly, even if the Court assumes without deciding that Kaiser's argument for ER patients is true, Plaintiff has sufficiently alleged breach of contract claims for non-ER patients; therefore, Count I should not be dismissed.

Regarding the non-ER patients, Kaiser argues that it should be required to pay the "reasonable price" or "market rates" instead of Plaintiff's billed charges - therefore, Plaintiff's contract claims asking for 100% of the billed charges should be dismissed. Def. Kaiser's Mtn. to Dismiss at 13. The Court observes that Plaintiff has a cognizable legal theory of using the chargemaster rates to set the price term of a medical services contract. In Allen v. Clarian Health Partners, patients treated by a hospital brought a claim for breach of contract and sought declaratory judgment that the hospital's chargemaster rates were unreasonable and unenforceable. 980 N.E.2d 306, 310 (2012). The Supreme Court of Indiana held, inter alia, that the contract's reference to "payment of the account" was sufficient to refer to the chargemaster rates. Id at 309-310. The court

also noted that "[i]t is from these chargemaster prices that insurance companies negotiate with hospitals for discounts for their policyholders." Id at 310.  The court then explained that, because the published chargemaster rates were sufficiently clear, the court declined to "impute a "reasonable" price term." Id at 311.[17/]

According to Allen, Plaintiff has a cognizable legal theory that Kaiser's promise to pay "100% of [the] billed charges" forms a sufficiently clear price term for a medical services contract.  Therefore, Plaintiff adequately states a claim under Rule 12(b)(6).  See Johnson v. Riverside Healthcare System, LP, 534 F.3d 1116, 1122-24 (9th Cir. 2008) (holding that plaintiff's complaint survived defendant's motion to dismiss because of the existence of a cognizable legal theory).

Morever, assuming arguendo that Kaiser's legal theory is correct, such an argument creates an issue of fact that should not be considered when deciding a motion to dismiss.  In order to dismiss Plaintiff's claim under Kaiser's theory, the Court would need to conclude as a matter of law that Plaintiff's billed charges are not reasonable and not reflective of the market rate

_____

[17/]  Kaiser cited Allen v. Clarian Health Partners, 955 N.E.2d 804 (Ind. Ct. App. 2011) in its briefs for the proposition that a court should impute a "reasonable price" as opposed to the chargemaster rates for the price term of a contract.  However, the court of appeals' decision was vacated by the Indiana Supreme Court decision discussed herein.  Allen v. Clarian Health Partners, 980 N.E.2d 306 (2012).

for such services.  The Court cannot hold that Plaintiff's billed rates are unreasonable or above the market rate without evidence proving that fact.  Indeed, the Howell v. Hamilton Meats & Provisions, Inc. case cited by Kaiser refutes Kaiser's position by stating as follows: "We do not suggest hospital bills always exceed the reasonable value of the services provided. Chargemaster prices for a given service can vary tremendously . . . making any broad generalization about the relationship between the value or cost of medical services and the amounts providers bill for them - other than that the relationship is not always a close one - would be perilous." 52 Cal. 4th 541, 562 (2011).

Additionally, none of Kaiser's cases cited for this proposition are in the context of a motion to dismiss, instead the cases demonstrate that this issue is an issue of fact.  See Temple Univ. Hosp., Inc. v. Healthcare Mgmnt. Altern., 832 A.2d 501, 508-509 (2003), Canyon Ambulatory Surgery Ctr. v. SCF Arizona, 225 Ariz. 414, 424 (Ariz. Ct. App. 2010) (upholding a trial court's decision after evaluating the evidence regarding the reasonable value of services), Baker Cnty. Medical Serv., Inc. v. Aetna Health Management, LLC, 31 So.3d 842, 844-46 (2010) (noting that a Florida statute regarding reasonable charges requires findings of fact when determining fair market value of services), and Nassau Anesthesia Assoc. PC v. Chin, 924 N.Y.S.2d 252, 286 (N.Y. Dist. Ct. 2011)("the Court, as fact-finder at this

inquest, declines plaintiff's request for an award of damages based upon its so-called "usual and customary" fee schedule").

**F.   Whether the Patient Consent Forms Create a Contract Between Plaintiff and Kaiser.**

Kaiser argues that the Patient Consent forms signed by Kaiser members cannot legally bind Kaiser because there is an anti-assignment clause in Kaiser's contracts with its members. Def. Kaiser's Mtn. to Dismiss at 16.  The Court declines to dismiss Plaintiff's claim on the basis of this affirmative defense.  First, as noted above, the Court exercises its discretion to decline to consider Kaiser's member contracts at this stage of the proceedings because the consideration of such exhibits is not in alignment with the doctrines of incorporation by reference or judicial notice.  <u>See</u> <i>supra</i> Section I at 15-20. Second, the actual Patient Consent Form is not before the Court in order for the Court to evaluate this argument.

**III. Whether This Court Should Dismiss Plaintiff's Count II - Intentional Misrepresentation, Fraud, and Fraudulent Concealment, Count III - Negligent Misrepresentation, and Count X - Promissory Estoppel or Equitable Estoppel Claims.**

Under Hawai'i law, the elements for intentional misrepresentation or fraud are as follows: "(1) false representations were made by defendants, (2) with knowledge of their falsity (or without knowledge of their truth or falsity),

-37-

(3) in contemplation of plaintiff's reliance upon these false representations, and (4) plaintiff did rely upon them." Shoppe v. Gucci America, Inc., 94 Hawaiʻi 368, 386 (2000).

Under Rule 9(b), Plaintiff must "state with particularity the circumstances constituting fraud or mistake." As articulated by the Ninth Circuit, Rule 9(b) serves the following purposes: "(1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) (internal citations and quotation marks omitted).

Allegations may be deemed sufficient under Rule 9(b) if they identify "the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." Neubronner v. Milken, 6 F.3d 666, 671-72 (9th Cir. 1993). Accordingly, a complaint should identify the "who, what, when, where, and how of the misconduct charged." Ebeid ex rel. U.S. v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010). Moreover, the

plaintiff "must set forth what is false or misleading about a statement, and why it is false." Id.

**A. Whether Plaintiff Sufficiently Pleads Fraud Regarding the Remittance Advice Forms and the June 20, 2012 and August 30, 2012 Letters.**

For the first requirement of identifying a false representation, the Complaint alleges that Kaiser issued Remittance Advice forms to Plaintiff "reflecting discounted rates for Defendant Kaiser to pay."[18] Compl. at 12 ¶ 33. Plaintiff further alleges that the Remittance Advice forms "failed to state that Stratose and Kaiser were in fact not eligible for the millions of dollars worth of discounts that they claimed." Compl. at 28 ¶ 102. According to the Complaint, Kaiser's representations on the forms were false because Kaiser was not legitimately entitled to the discounts under the PPO Agreement. Id at 15, ¶¶ 44-49. The Complaint mentions the specific parties involved and identifies dates when the Remittance Advice forms

---

[18] Plaintiff also refers to misrepresentations on Payor Repricing Transmittal forms, but the Court notes that these forms were sent by Stratose. Compl. at 23-24 ¶ 80. While Plaintiff in Count IV of the Complaint alleges fraud against Stratose for submitting the Payor Repricing Transmittal forms (Compl. at 23); Kaiser has not contested Count IV in its Motion to Dismiss. The Court therefore limits the Count II fraud discussion to the representations alleged in Count II of the Complaint. However, because Kaiser moves to dismiss the Count VI RICO claim which includes allegations regarding the Payor Repricing Transmittal forms, the Court examines the alleged misrepresentations on Stratose's forms in the discussion of Count VI. See Section IV infra at 54-55.

-39-

were submitted via mail or wire carriers, including March 30, 2012, and continuing through the date of the Complaint.  Id at 29-30 ¶ 103.  The Court concludes that these allegations are sufficient to allege fraud under Rule 9(b) - Kaiser has sufficient notice of the misconduct on the Remittance Advice forms to adequately respond to the allegations.  See Walsh v. Stratacare, 752 F. Supp. 2d 896 (S.D. Ill. 2010) and Three Rivers Provider Network, Inc. v. Meritain Health, Inc., No. 07CV1900 WQH(BLM), 2008 WL 2872664 at *8-9 (S.D. Cal. 2008).

Plaintiff also argues as a second basis for fraud that Kaiser made false representations in its June 20, 2012[19] and August 30, 2012 letters to Plaintiff.  Plntf.'s Opp. at 20, ECF No. 53.  Regarding the June 20, 2012 letter, the fraud allegations are insufficient because they do not identify a specific statement that constitutes a false representation.  Compl. at 15, ¶ 42; 17, ¶¶ 51-52.  However, in Kaiser's August 30, 2012 letter, Plaintiff alleges that an attachment from Defendant Stratose made a false representation that Kaiser's medical invoices had "access to discounted pricing" through the PPO Agreement.  Compl. at 15 ¶ 42; 16, ¶¶ 47-49.  As noted above,

---

[19]  The Court observes that Plaintiff refers to a letter from Kaiser dated June 20, 2012 in ¶ 39 of the Complaint, but the allegations in ¶ 52 refer to a June 15, 2012 letter.  The Court assumes for the purpose of considering Kaiser's Motion to Dismiss that the discrepancy between the dates is a typographical error, and notes that Plaintiff should address the discrepancy regarding these dates in any amended complaint.

Kaiser's representations are allegedly false because Kaiser was not legitimately entitled to the discounts.  Id at 15, ¶¶ 44-49. The Court concludes that the allegations regarding the August 30, 2012 letter sufficiently plead fraud with the particularity required by Rule 9(b).  Plaintiff provides sufficient details such as the date and content of the letter, the parties involved, and the basis for why the statements are false.  Accordingly, Kaiser has sufficient notice under Rule 8 and Rule 9(b) to respond to these allegations.  See Walsh v. Stratacare, 752 F. Supp. 2d 896 (S.D. Ill. 2010) and Kearns, 567 F.3d at 1125 (holding that one of the purposes of Rule 9(b) is to provide defendants with adequate notice to form a defense against claims of fraud).

Regarding the second element of fraud, Plaintiff sufficiently pleads that Kaiser knew that the representations were false, or in the alternative, that Kaiser made the assertions with "reckless disregard as to the falsity of such representations."  Compl. at 21 ¶ 67.  For the third requirement, Plaintiff pleads that Kaiser "knew or should have known that Plaintiff would reasonably rely upon the fraudulent misrepresentations."  Compl. at 21 ¶ 68.  These allegations are sufficient under Fed. R. Civ. P. 9(b) because "intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

Regarding the fourth requirement, Plaintiff pleads reliance upon Kaiser's representations in the form of continuing to provide services and accepting payment on the bills.  C.f. Three Rivers Provider Network, Inc., 2008 WL 2872664 at *10 (holding that plaintiff adequately alleged reliance by stating that it continued to work with defendant based on the representations); Compl. at 19 ¶ 60, 21 ¶¶ 68-69.[20/]

Kaiser argues that the statements are not false because Plaintiff has a "mistaken 100% legal opinion."  Kaiser's Mtn. to Dismiss at 19.  The Court observes that "a statement as to the law, like a statement as to anything else, may be intended and understood either as one of fact or one of opinion only, according to the circumstances of the case."  See Elliot Megdal and Assoc. v. Hawaii Planing Mill, Ltd., 814 F. Supp. 898 (D. Haw. 1993) (citing Prosser, Law of Torts (4th ed. 1971) 725 § 109).[21/]  In this case, Plaintiff alleges with particularity that

---

[20/]  While Plaintiff's reliance allegations meet the minimum requirements for pleading fraud; the Court notes that Plaintiff's allegations regarding the reliance element should be pled with more specificity in any amended complaint.

[21/]  The Court notes that, under current Hawaiʻi Supreme Court precedent, "fraud cannot be predicated upon misrepresentations of law or misrepresentation as to matters of law."  Kyles v. Lantis, 39 Haw. 440, 444 (1952).  Under this line of precedent, the Court assumes without deciding that Plaintiff's allegations may not state a claim for fraud because Kaiser's statements rest on its understanding of the legal effect of the Queen's-HMN PPO Agreement.  See Globalmart, Inc. v. Posec Hawaii, Inc., 127 Hawaiʻi 412, *8 (Haw. Ct. App. 2012) (unpublished
(continued...)

-42-

Kaiser made specific statements indicating that the discounts apply.  Compl. at 12 ¶ 33; 15 at ¶ 42.  Plaintiff also alleges that Kaiser intended the representation to be one of fact regarding the applicability of the discounts, and that Plaintiff understood Kaiser's representation to be a statement of fact about the effect of the contract.  See Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally"); Compl. at 16-17 ¶¶ 50, 52; Id at 15 ¶ 42.[22]

---

[21] (...continued)
disposition) (observing that statements about the legal effect of a memorandum of understanding could not form the basis of a fraud claim because the court would need to apply the law of contracts to determine if the statements were true or false).  However, the Court is inclined to follow the reasoning in Elliot Megdal and Assoc. v. Hawaii Planing Mill, Ltd., 814 F. Supp. 898 (D. Haw. 1993) which the district court determined that the Hawai'i Supreme Court would likely "abandon the holding in Kyles in favor of the principles established in the Restatement."  Id at 904-05. Under the Restatement of Torts (Second) § 525, a fraud claim may be based upon a "misrepresentation of fact, opinion, intention or law."  In Elliott Megdal, the district court observed that (1) the Restatement of Torts (Second) § 525 allows for fraud claims based on misrepresentations of law, (2) the modern trend among state courts is to follow the Restatement rule, (3) the Hawai'i courts have increasingly relied upon the Restatement for guidance regarding tort principles, and (4) the Oregon state court, the publisher of a decision that the Hawai'i Supreme Court relied upon in Kyles, subsequently reversed its position regarding this issue.  Id at 903-04.  Accordingly, this Court is likewise convinced that the Hawai'i Supreme Court would adopt the Restatement over the previous holding in Kyles, and determines that a misrepresentation of law may form the basis of a fraud claim.

[22] However, the Court notes that Plaintiff should identify with more specificity the types of patient claims that are at
(continued...)

Kaiser also argues that there are no false representations because Kaiser was entitled to use the PPO Agreement to take the discounts.  Def. Kaiser's Mtn. to Dismiss at 17.  Kaiser states that Plaintiff has no textual support for the proposition that Stratose and Kaiser are not "payors" covered by the contract.  First, the Court has already determined that it will not consider the Stratose-HMN Contract or the Kaiser-Stratose Contract in ruling on this Motion to Dismiss.  Moreover, the Court declines to consider whether Kaiser is actually entitled to take the discounts because this affirmative defense involves factual issues that should not be resolved on a motion to dismiss.[23]  *Supra* Section II.D at 32-33.

**B. Whether Plaintiff Sufficiently Pleads Fraud Regarding Kaiser's Oral Statements in January 2012.**

Plaintiff also alleges that Kaiser committed fraud through oral statements made on January 4 and 5 in 2012.  Compl.

---

[22] (...continued)
issue in the fraud claims.  For instance, there appear to be distinctions between emergency room patients, non-emergency room patients, and Medicaid patients, with different rates that may apply to each type of patient.  See Def. Kaiser's Mtn. to Dismiss at ii, 6, 11, 12; Plntf.'s Opp. at 3 n.4.  Plaintiff should also clarify in the other claims the types of patient invoices that are in dispute in this litigation.

[23] The Court's current order addressing this Motion to Dismiss does not preclude Kaiser from challenging the factual basis for Plaintiff's claims in a motion for summary judgment, which appears to be the more appropriate motion for discussing the defenses raised by Kaiser.

at 9 ¶ 19.   However, Plaintiff fails to plead the first
requirement with particularity under Rule 9(b).

        Regarding the existence of a representation, Kaiser
argues that Plaintiff does not plead the specific content of the
oral statements made by a Kaiser employee.   Def. Kaiser's Mtn. to
Dismiss at 17.   Plaintiff alleges that, on or about January 4 or
5 in 2012, Plaintiff spoke via telephone with Kaiser employees,
who stated that Kaiser would pay 100% of the billed charges for
Plaintiff's services.   Compl. at 9 ¶ 19.   The Court concludes
that Plaintiff must plead with more detail the people involved,
and the content of the statements that were made by the Kaiser
employees.   See Ebeid, 616 F.3d at 998 (requiring plaintiffs to
plead the "who, what, when, where, and how of the misconduct
charged").

        Additionally, Plaintiff fails to plead with
particularity as to how the statement is false.   Kaiser argues
that promising to pay 100% of the billed charges is not fraud
because "fraud cannot be predicated on statements which are
promissory in their nature, or constitute expressions of
intention, and an actionable representation cannot consist of
mere broken promises, unfulfilled predictions or expectations, or
erroneous conjectures as to future events."   Def. Kaiser's Mtn.
to Dismiss at 18 (citing Stahl v. Balsara, 60 Hawaii 144, 149
(1978)).   The alleged statement made by Kaiser appears to be

-45-

promissory in nature - "Kaiser employees provided direct, verbal agreement that Kaiser would pay 100% of billed charges going forward." Compl. at 9 ¶ 19.

The Court observes that, under Hawai'i law, "[a] promise relating to future action or conduct will be actionable . . . if the promise was made without the present intent to fulfill the promise." Joy A. McElroy, M.D., Inc. v. Maryl Group, Inc., 107 Hawaii 423, 433 (Haw. Ct. App. 2005). In this case, Plaintiff alleges that Kaiser did not intend to pay the 100% billed charge at the time Kaiser made the statement. Compl. at 22, ¶ 10. However, according to the Complaint, Kaiser paid 100% of the billed charges in January and February of 2012, which demonstrates that Kaiser's statement was true, not false. Id at 11, ¶ 31. As the Ninth Circuit explained in the case In re GlenFed, Inc. Sec. Litig., the statement must be "just as false when defendant uttered it as when plaintiff discovered the truth." 42 F.3d 1541, 1548 (9th Cir. 1994) (superseded by 15 U.S.C. § 78u-4 on other grounds). Therefore, the Court concludes with regard to Kaiser's oral statements that Plaintiff fails to sufficiently allege a *false* representation.

Because the Court concludes that Plaintiff failed to sufficiently plead the existence of a false statement, the Court need not address the other requirements for fraud regarding the oral representations. In the event an amended complaint is

filed, the Court notes that any such complaint should state the fraud claim involving oral misrepresentations with sufficient particularity as required by Rule 9(b).

**C. Whether Plaintiff Sufficiently Pleads a Claim for Fraudulent Nondisclosure.**

Regarding the elements for fraudulent nondisclosure,[24] Hawai'i follows Restatement (Second) of Torts § 551 (1977). <u>See</u> <u>Sung v. Hamilton</u>, 710 F. Supp. 2d 1036, 1047 (D. Haw. 2010)(noting that, under Hawai'i law, fraud can be committed "by non-disclosure as well as by an affirmative misrepresentation"), <u>Molokoa Village Dev. Co. v. Kauai Elec. Co.</u>, 60 Haw. 582, 590 (1979). According to the Restatement, a party may be held liable if (1) the party fails "to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction" and (2) the party is under a

_____

[24] Plaintiff uses the term "fraudulent concealment" but appears to plead the tort of "fraudulent nondisclosure." <u>See</u> Plntf.'s Opp. at 19 n.7. The Hawai'i Supreme Court has defined "fraudulent concealment" as the "employment of artifice, planned to prevent inquiry or escape investigation, and [mislead] or hinder acquirement of information disclosing a right of action. The acts relied on must be of an affirmative character and fraudulent." <u>Au v. Au</u>, 63 Haw. 210, 215 (1981). "Fraudulent concealment involves the actions taken by a liable party to conceal a known cause of action." <u>Id.</u> Plaintiff does not appear to plead allegations for this type of tort. Instead, Plaintiff appears to be relying upon the elements for "fraudulent nondisclosure"; accordingly, the Court will analyze the claim under Restatement (Second) of Torts, § 551 as cited by the Hawai'i courts. <u>See</u> <u>Molokoa Village Development Co. v. Kauai Electric Co.</u>, 60 Haw. 582, 590 (1979).

duty to the other party "to exercise reasonable care to disclose the matter in question."  Restatement (Second) of Torts, § 551(1).  The Restatement further explains when a duty may arise:

> (2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated,
>
> > (a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and
> >
> > (b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of facts from being misleading; and
> >
> > (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; and
> >
> > (d) the falsity of a representation not made with the expectation that it will be acted upon, if he subsequently learns that the other is about to act in reliance upon it in a transaction with him; and
> >
> > (e) facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of facts.
>
> Restatement (Second) of Torts § 551(2).

Plaintiff alleges that Kaiser "intentionally omitted and concealed" the fact of "its purported relationship with Defendant Stratose." Compl. at 20 ¶ 65.  Plaintiff identifies certain times and places when Kaiser omitted or concealed this fact.  Compl. at 6 ¶ 14, 7 ¶ 15, 8 ¶ 18, 9 ¶ 19, 10 ¶¶ 22-25.  Plaintiff further alleges that Kaiser did so "to induce Plaintiff

to continue providing healthcare services" in order to claim millions of dollars of discounts.  Compl. at 10 ¶ 25, 20 ¶ 65.

However, Plaintiff fails to plead that Kaiser was under a duty to Plaintiff "to exercise reasonable care to disclose the matter in question."  Restatement (Second) of Torts, § 551(1). While Kaiser does not make the argument that Plaintiff fails to plead the duty requirement; Kaiser argues that it had no fiduciary duty to disclose the contracts with Stratose or to correct Plaintiff's mistaken opinion.  Def. Kaiser's Mtn. to Dismiss at 17.  However, as noted above, the existence of a fiduciary relationship is only one way that a duty to disclose may arise.  Restatement (Second) of Torts, § 551(2).  Plaintiff in its Opposition identifies three of the scenarios listed in the Restatement where a duty to disclose may be applied, but Plaintiff fails to allege in the Complaint itself that Kaiser had a duty to disclose or the specific facts and circumstances that created such a duty. Plntf.'s Opp. at 22; see generally, Complaint.  Accordingly, the Court DISMISSES without prejudice Count II of the Complaint to the extent that the claim is based upon fraudulent nondisclosure.  However, the Court grants leave to amend the Complaint because Plaintiff may be able to state

facts demonstrating a duty on Kaiser's part to disclose information under Restatement (Second) of Torts § 551(2).[25/]

**D. Whether Plaintiff Sufficiently Pleads a Claim for Negligent Misrepresentation.**

Kaiser attempts to apply the fraudulent misrepresentation arguments to Plaintiff's Count III negligent misrepresentation claim without listing the elements for negligent misrepresentation or otherwise contesting the claim. Kaiser's Mtn. to Dismiss at 17.

A plaintiff must allege the following elements to state a claim for negligent misrepresentation under Hawaiʻi law:  "(1) false information [was] supplied as a result of the failure to exercise reasonable care or competence in communicating the information, (2) the person for whose benefit the information is supplied suffered a loss, and (3) the recipient relies upon the misrepresentation."  Smallwood v. Ncsoft Corp., 730 F. Supp. 2d 1213, 1231 (D. Haw. 2010) (citing Blair v. Ing, 95 Hawaiʻi 247, 270 (2001)).  This Court previously held that negligent representation claims do not need to be pled with particularity under Rule 9(b).  Smallwood, 730 F. Supp. 2d at 1231-32.

---

[25/]  The Court also directs Plaintiff to plead with more specificity how Kaiser's failure to disclose its relationship with Stratose affected Plaintiff's reliance or opportunity to avoid harm.

According to the elements listed above, Plaintiff must allege that the information supplied by Kaiser was false.  As mentioned previously in Section III.B of this order, Plaintiff's allegations regarding Kaiser's oral statements are deficient because the allegations do not demonstrate that Kaiser made a false statement.  *Supra* Section III.B at 45-46.  Plaintiff also failed to specifically identify a false representation in the June 20, 2012 letter.  *Supra* Section III.A at 40.  However, with respect to the August 30, 2012 letter and the Remittance Advice forms, Plaintiff sufficiently alleges misrepresentations as discussed previously in Section III.A.  *Supra* Section III.A at 39-40.  Accordingly, the Court DENIES Kaiser's Motion to Dismiss Count III to the extent that the claim is based on the August 30, 2012 letter and the Remittance Advice forms, and GRANTS the Motion to the extent that the claim is based upon Kaiser's alleged oral representations and the June 20, 2012 letter.  However, the Court gives Plaintiff leave to amend this claim in addition to the fraud claims.

**E. Whether Plaintiff Sufficiently Pleads a Claim for Promissory Estoppel or Equitable Estoppel.**

Kaiser attempts to apply its fraud arguments to Plaintiff's promissory and equitable estoppel claims.  Def. Kaiser's Mtn. to Dismiss at 17 n.5.  Kaiser asserts that Plaintiff's estoppel claims (1) fail to allege a false

representation and (2) fail to meet Rule 9(b)'s particularity requirement.  Id at 17.  The Court observes that the elements for a fraud claim are not identical to the elements for a promissory or equitable estoppel claim.  Compare Shoppe v. Gucci Am., Inc., 94 Hawai'i 368, 386 (2000) (listing elements for fraud) with Gonsalves v. Nissan Motor Corp., 100 Hawai'i 149, 164 (2002) (listing elements for promissory estoppel).  Kaiser briefly mentions the estoppel claims in a footnote and does not provide any legal basis or analysis for applying Rule 9(b) to these claims.  Id.  Accordingly, the Court declines to dismiss Plaintiff's promissory and equitable estoppel claims on the basis of the fraud arguments.

**IV.  Whether This Court Should Dismiss Plaintiff's Count VI - Violations of RICO (18 U.S.C. §§ 1962(c) and 1964(c)) Claim.**

The Racketeer Influenced and Corrupt Organizations Act ("RICO") provides, inter alia, as follows:  "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit."  18 U.S.C. § 1964(c); see Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 641 (2008). The present case specifically involves 18 U.S.C. § 1962(c), which makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect,

-52-

interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  The term "racketeering activity" contains numerous predicate acts; the ones at issue in the current case involve violations of 18 U.S.C. § 1341 (relating to mail fraud) and 18 U.S.C. § 1343 (relating to wire fraud). The mail fraud statute in turn penalizes a person who uses the mail system to execute any fraudulent scheme.  18 U.S.C. § 1341. Likewise, the wire fraud statute penalizes a person who uses wire, radio, or television communications in order to execute a fraudulent scheme.  18 U.S.C. § 1343.

The Supreme Court synthesized the above statutory framework as follows:

> The upshot is that RICO provides a private right of action for treble damages to any person injured in his business or property by reason of the conduct of a qualifying enterprise's affairs through a pattern of acts indictable as mail fraud.  Mail fraud, in turn, occurs whenever a person, "having devised or intending to devise any scheme or artifice to defraud," uses that mail "for the purpose of executing such scheme or artifice or attempting so to do."  18 U.S.C. § 1341. The gravamen of the offense is the scheme to defraud, and any "mailing that is incident to an essential part of the scheme satisfies the mailing element" . . . even if the mailing itself contains no false information.

Bridge v. Phoenix Bond and Indem. Co., 553 U.S. 639, 647 (2008).

Because the RICO claim in this case is based upon Plaintiff's allegations of Kaiser and Stratose's fraud related to claiming discounts, Rule 9(b)'s requirement of pleading fraud

-53-

with particularity also applies to this claim.  <u>See</u> <u>Odom v. Microsoft Corp.</u>, 486 F.3d 541, 553-54 (9th Cir. 2007).  The complaint must state the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." <u>Sanford v. MemberWorks, Inc.</u>, 625 F.3d 550, 558 (9th Cir. 2010).

Specifically with respect to mail and wire fraud, Plaintiff must allege the following elements: "(1) formation of a scheme or artifice to defraud; (2) use of the United States mails or wires, or causing such a use, in furtherance of the scheme; and (3) specific intent to deceive or defraud." <u>Sanford</u>, 625 F.3d at 557.  While the elements of knowledge and intent may be averred generally; the factual circumstances of the fraud itself require particularized allegations.  <u>Id</u> at 558.

In <u>Walsh v. Stratacare</u>, 752 F. Supp. 2d 896 (S.D. Ill. 2010), the district court held, inter alia, that a plaintiff sufficiently pled a RICO claim by alleging that (1) the PPO, repricing company, and third-party payors formed an enterprise, (2) the enterprise fraudulently allowed the repricing company and the third-party payors to illegitimately claim PPO discounts, and (3) the deceptive bills submitted to the health care provider were transmitted via mail and/or wire.  <u>Id</u> at 911.

In this case, Plaintiff alleges with particularity that Stratose and Kaiser devised a scheme to defraud by re-pricing

-54-

"medical claims with HMN's discounts under the PPO Agreement, which discounts Stratose and Kaiser had no right to take." Compl. at 18 ¶ 100.  The Complaint contains specific statements on the Payor Repricing Transmittal that were misleading: "Payment being made in accordance with HMN/RAN/AMN discount rate agreement."  Id at 13 ¶ 34.  Plaintiff further alleges that the forms "failed to state that Stratose and Kaiser were in fact not eligible for the millions of dollars worth of discounts that they claimed."  Compl. at 28 ¶ 102.  Plaintiff also mentions specific dates when the Remittance Advice forms were submitted, including March 30, 2012, and continuing through the date of the Complaint. Compl. at 29-30 ¶ 103.  The Payor Repricing Transmittal forms were issued throughout 2012, including March 8, 2012, and continuing through the date of the Complaint.  Id at ¶ 104.  The allegedly deceptive Remittance Advice forms and Payor Repricing Transmittal forms were delivered to Plaintiff by way of U.S. mail or wire.  Compl. at 28 ¶ 102; Compl. at 29 ¶ 104(b).

Based on the statements in the Complaint, the Court concludes that Plaintiff alleges the predicate acts of mail and wire fraud with sufficient particularity.[26/]  See Walsh, 752 F. Supp. 2d at 911; see also Three Rivers Provider Network, Inc. v.

---

[26/]  While Plaintiff's allegations meet the standard to survive a motion to dismiss, the Court observes that any amended complaint should identify the types of patient invoices at issue in the RICO claims (emergency room patients, non-emergency room patients, Medicare patients, etc.).

<u>Meritain Health</u>, Inc., No. 07CV1900, 2008 WL 2872664 at *9-10

(S.D. Cal. 2008)(plaintiff sufficiently alleged RICO claim based

upon defendant's misrepresentations on billing statements).[27/]

     Kaiser argues that Plaintiff failed to allege facts to

show that Kaiser was not a "payor." Def. Kaiser's Mtn. to

Dismiss at 19. Kaiser also argues that Kaiser had no duty to

disclose its contractual rights to the discounts or to correct

Plaintiff's mistaken opinions. <u>Id.</u> As discussed previously

herein, the Court has already determined that it will not

consider the Stratose-HMN Contract or the Kaiser-Stratose

Contract in ruling on this Motion to Dismiss. *Supra* Section I at

16-20. The Court also declines to consider whether Kaiser is

actually entitled to take the discounts because this affirmative

defense involves factual issues that should not be resolved on a

motion to dismiss. *Supra* Section II.D at 32-33.

     Kaiser also argues that the Complaint fails to state a

"pattern of activity" under RICO because Plaintiff's allegations

only involve a single contract. Def. Kaiser's Mtn. to Dismiss at

---

[27/] Kaiser cites to <u>Schoedinger v. United Healthcare of the Midwest, Inc.</u>, 557 F.3d 872, 879 (8th Cir. 2009) to argue that Plaintiff cannot allege a RICO claim on the basis of a billing dispute. The Court notes that the district court in <u>Schoedinger</u> conducted a trial and considered the evidence before determining whether the representations on the billing forms constituted fraud. <u>Id.</u> Accordingly, the Court declines to follow <u>Schoedinger</u> at this stage of the proceedings because the Court will not consider factual issues in determining a motion to dismiss.

20.[28/]  In H.J. Inc. V. Northwestern Bell Tel. Co., 492 U.S. 229

(1989), the Supreme Court held that a "pattern" requires a

showing of a "relationship between the predicate acts" and of

"the threat of continuing activity."  492 U.S. at 239.

Accordingly, Plaintiff must show that "the racketeering acts are

related, and they amount to or pose a threat of continued

criminal activity."  Id.

       For the requirement of relationship, "criminal conduct

forms a pattern if it embraces criminal acts that have the same

or similar purposes, results, participants, victims, or methods

of commission."  Id at 240.  For the requirement of continuity, a

plaintiff need not show that a qualifying enterprise engaged in

multiple schemes.  Id.  Instead, a plaintiff must establish a

"threat of continuity," i.e. that the threat of repeating

racketeering acts extends "indefinitely into the future."  Id at

242.  Specifically, the Supreme Court noted that the continuity

requirement may be satisfied "where it is shown that the

---

[28/]  Kaiser cites to Johnson v. First Federal Bank of
California, Nos. C 08-00264 PVT, 2008 WL 2705090 (N.D. Cal. 2008)
for the proposition that the Complaint fails to allege a pattern
of racketeering activity.  However, the district court in Johnson
did not explain how RICO's "pattern of activity" requirement
applied to the plaintiff's mortgage fraud allegations.  Johnson,
2008 WL 2705090 at *6.  Additionally, the district court in
Johnson held that "it is unlikely that any set of facts in this
case would meet the threshhold for a RICO claim."  Id.  In this
case, the Walsh decision demonstrates that Plaintiff alleges
sufficient factual matter to present a claim under RICO.  See
Walsh, 752 F. Supp. 2d at 911.

predicates are a regular way of conducting defendant's ongoing legitimate business (in the sense that it is not a business that exists for criminal purposes), or of conducting or participating in an ongoing and legitimate RICO enterprise." Id at 243.

The Ninth Circuit Forsyth v. Humana Inc. case is instructive regarding the pattern of racketeering activity alleged in the Complaint. 114 F.3d 1467, 1482 (9th Cir. 1997) (overruled on other grounds by Lacey v. Maricopa County, 693 F.3d 896 (9th Cir. 2012). In Forsyth, a health insurance provider had entered into an agreement with beneficiaries to make coinsurance payments for the health care received; under the contract, the insurance provider was required to pay 80% of the beneficiaries' hospital charges, and the beneficiaries were required to pay 20%. 114 F.3d at 1472. The beneficiaries went to a hospital to receive care. Id. Unknown to the beneficiaries, the health insurance provider had entered into an agreement with the hospital to receive discounts on the services. Id. However, the health insurance provider claimed the entire discount for itself instead of proportionately adjusting the amount the beneficiaries needed to pay – as a result, the beneficiaries paid significantly more than the 20% share listed in the contract. Id.

The Ninth Circuit found that a triable issue of fact existed as to the beneficiaries' RICO claim. Id at 1482. While this case is distinguishable because it is the hospital, not the

beneficiaries, alleging acts of fraud; the <u>Forsyth</u> case appears to implicitly support the proposition that the overall scheme in this case (i.e. deliberately misrepresenting bill charges) can constitute a pattern of racketeering activity.

Specifically, Plaintiff's Complaint contains the following allegations that state a pattern of racketeering activity. For the relationship requirement, Kaiser and Stratose sent multiple Remittance Advice forms and Payor Repricing Transmittals for various Kaiser patients by way of mail or wire. Compl. at 28 ¶ 102; Compl. at 18 ¶ 100. The predicate acts were allegedly used for the common purpose or result of re-pricing Plaintiff's invoices to take illegitimate discounts. Compl. at 18 ¶ 100. The Complaint also meets the continuity requirement because Plaintiff states that the Payor Repricing Transmittal forms had been issued throughout 2012 and continued through the date of the Complaint. Compl. at 29, ¶ 103. Based on the allegations in the Complaint, the alleged mail and wire fraud is a threat that extends indefinitely into the future as Kaiser continues to claim discounts on Plaintiff's invoices.

Furthermore, the <u>Walsh Chiropractic Ltd. v. StraCare</u> case cited by Plaintiff provides support that Plaintiff alleges a "pattern of racketeering activity." 752 F. Supp. 2d at 911-912. In <u>Walsh</u>, the plaintiff health care provider sued a defendant repricing company for illegitimately granting PPO discounts to

the company's clients.  Id at 903-904.  The district court found

that the plaintiff sufficiently alleged a pattern of racketeering

activity by stating (1) the repricing company had "a legitimate

business purpose administering workers' compensation claims for

its third-party payor clients," (2) the repricing company was

part of a "deceptive scheme to reprice medical claims" for its

clients by using illegitimate discounts, and (3) the repricing

company delivered the deceptive bills through mail carriers.  Id

at 912.  Again, in this case Plaintiff alleges that Stratose and

Kaiser engaged in a pattern of activity through statements that

(1) Kaiser and Stratose have a legitimate business purpose of

arranging for payment on medical services, (2) Kaiser and

Stratose had a deceptive scheme to apply illegitimate discounts

to Plaintiff's bills, and (3) Kaiser and Stratose delivered the

deceptive bills via U.S. mail and wire services.  Compl. at 27-28

¶¶ 99-100.  Accordingly, the Court concludes that Plaintiff

sufficiently pleads the "pattern of racketeering activity"

requirement under RICO.  See also Three Rivers Provider Network,

Inc., 2008 WL 2872664 at *9-10 (holding that defendants engaged

in a pattern of racketeering activity by submitting deceptive

medical services invoices).

       Kaiser's cases do not convince the Court otherwise.  In

Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc., the First

Circuit found that no pattern of activity existed when defendants

had a plan to obtain one specific business.  329 F.3d 216, 233 (1st Cir. 2003).  The First Circuit observed that a claim under RICO might have existed if the plaintiff had produced evidence that the defendants planned to take over another company using the same fraudulent scheme.[29/]  Id at 233.  In this case, there is no discrete event or ultimate objective that has been attained to indicate that Stratose and Kaiser's scheme is no longer a continuing threat.  Based on Plaintiff's allegations, Kaiser and Stratose will continue to rely upon the contracts and will continue to commit the predicate acts by sending Remittance Advice forms and the Payor Repricing Transmittals to claim discounts.  Compl. at 29, ¶ 103.

Kaiser's citation to Grauberger v. St. Francis Hospital also does not convince the Court that Plaintiff fails to plead a RICO claim.  169 F. Supp. 2d 1172, 1177 (N.D. Cal. 2001).  In Grauberger, the plaintiff was injured in an automobile accident and subsequently filed a lawsuit against the tortfeasor.  Id at 1175.  Although the  plaintiff's insurer had paid the hospital according to negotiated discounted rates instead of the normal rates, the hospital filed a lien on plaintiff's tort claim to recover the difference between the normal rates and the

---

[29/]  The Court also notes that in Kenda, the district court rendered its decision only after evaluating the evidence; Kaiser's argument therefore appears to present a factual issue that the Court declines to decide for this motion to dismiss.  Id at 233.

discounted rates.  Id.  The plaintiff tried to file a RICO claim

against the hospital for the hospital's act of filing a lien

against the plaintiff's tort judgment.  Id.  The district court

in Grauberger noted, inter alia, that the defendant in that case

had a statutory basis for filing the lien.  Id at 1177.  In this

case, the Court observes that Kaiser and Stratose are not relying

upon a state statute to legitimize their claims.  Additionally,

Walsh is more analogous to the current facts than Grauberger;

accordingly, the Court declines to follow Grauberger's result.

Kaiser next argues that the association between HMN,

Stratose, and Kaiser to provide discounted medical services is

not an "enterprise" under RICO.  Def. Kaiser's Mtn. to Dismiss at

21.  According to the Ninth Circuit in Living Designs, Inc. v.

E.I. Dupont de Nemours and Co., a plaintiff must allege and prove

the existence of two distinct entities under 18 U.S.C. § 1962(c):

"(1) a 'person' and (2) an enterprise' that is not simply the

same 'person' referred to by a different name." 431 F.3d 353, 361

(9th Cir. 2005).  The word "person" as it is used in 18 U.S.C. §

1962(c) means "any individual or entity capable of holding a

legal or beneficial interest in property."  18 U.S.C. § 1961(3).

The word "enterprise" is defined as "any individual, partnership,

corporation, association, or other legal entity, and any union or

group of individuals associated in fact although not a legal

entity."  18 U.S.C. § 1961(4).

In Odom v. Microsoft Corp., the Ninth Circuit clarified the criteria for an associated-in-fact enterprise under RICO. 486 F.3d 541, 552 (9th Cir. 2007).  An associated-in-fact enterprise is a "group of persons associated together for a common purpose of engaging in a course of conduct." Id.  A plaintiff must provide "evidence of an ongoing organization, formal or informal and evidence that the various associates function as a continuing unit." Id.

In Odom v. Microsoft, the court found that the plaintiff sufficiently stated a RICO claim by alleging that Microsoft and Best Buy constituted an associated-in-fact enterprise because the "defendants had the common purpose of increasing the number of people using Microsoft's Internet Service, and doing so by fraudulent means." Id at 552.  The court also found that there was an ongoing organization because Microsoft and Best Buy established mechanisms to transfer customers' personal and financial information between them. Id at 552.  Lastly, the court concluded that Microsoft and Best Buy operated as a continuing unit because the behavior was "ongoing" rather than isolated activity. Id at 553.

In this case, Plaintiff sufficiently pleads that Kaiser, Stratose, and HMN formed an associated-in-fact enterprise.  The enterprise allegedly has the common purpose of arranging for payment on medical services.  Compl. at 27, ¶ 99.

The enterprise has an organizational structure connected by agreements between HMN, Stratose, and Kaiser and "by a workflow of payments, claims, and claims information." Compl. at 27 ¶ 98. Finally, the Complaint claims that the conduct is ongoing instead of isolated because Stratose and Kaiser continue to issue invoice forms to Plaintiff reflecting the discounts. Compl. at 28-29 ¶ 103.

In <u>Living Designs</u>, the Ninth Circuit found that a chemical corporation, its law firms, and the expert witnesses retained by the law firms could constitute an associated-in-fact "enterprise" separate and distinct from the chemical corporation itself. 431 F.3d at 361. In this case, Kaiser is a separate and distinct entity from Stratose, and both are separate and distinct entities from HMN. Each organization has its own purpose and structure separate from the enterprise formed for the purposes of adjusting medical claims. <u>See</u> <u>Living Designs</u>, 431 F.3d at 361-362. Kaiser is a health maintenance organization that provides health benefit plans for its members. Def. Kaiser's Mtn. to Dismiss at 1. Stratose is alleged to be a re-pricing agency. Compl. at 28, ¶ 100. These entities participate in the associated-in-fact enterprise but are separable from each other. <u>See</u> <u>Living Designs</u>, 431 F.3d at 362 (holding that a law firm and client corporation were each separate and distinct but worked together to constitute an association). Accordingly, Plaintiff

sufficiently pleads the "enterprise" requirement for a RICO
claim.

Kaiser additionally argues that Plaintiff must plead
that it was "injured in [its] business or property," which
Plaintiff actually does plead in the Complaint.  Def. Kaiser's
Mtn. to Dismiss at 22; Compl. at 30 ¶ 106.  Kaiser also states
that Plaintiff must allege actual and justified reliance, but
Plaintiff is not required to plead such reliance under RICO.[30]
Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 648 (2008)
("If petitioners' proposed requirement of first-party reliance
seems to come out of nowhere, there is a reason:  Nothing on the
face of the relevant statutory provisions imposes such a
requirement.").

Lastly, the Court observes that Plaintiff claims that
the alleged arrangement between Kaiser, Stratose, and HMN
constitutes a "silent PPO."  Compl. at 13-18 ¶¶ 37-56.  An
example of a silent PPO scheme has been explained by district
courts as follows:

> [A]n entity . . . claims the discounted PPO rate for
> services rendered by a provider . . . without providing any

---

[30]  Kaiser cites to Hemi Group, LLC v. City of New York for
the proposition that Plaintiff must plead reliance.  559 U.S. 1,
130 S. Ct. 983 (2010).  Def. Kaiser's Mtn. to Dismiss at 22.
Kaiser misinterprets Hemi Group in arriving at this conclusion -
the Supreme Court was merely discussing that the respondent
failed to "rely" on an argument in the proceedings below, and as
a result, the Supreme Court declined to consider the argument on
appeal.  130 S. Ct. at 994.

incentives to steer its clients to the PPO provider.  If the entity and the provider are both members of the PPO, this discount payment may constitute a breach of the PPO contracts.  If the entity is not a member of the PPO, but pays only the PPO rate, this discount payment may constitute fraud.

Walsh, 752 F. Supp. 2d at 904; See Roche v. Travelers Prop. Cas. Ins. Co., No. 07-cv-302-JPG, 2008 WL 2875250 at *1 (S.D. Ill. 2008), Roche v. Liberty Mutual Managed Care, Inc., No. 07-cv-331-JPG, 2008 WL 2691735 at *1 (S.D. Ill. 2008), Christie Clinic, P.C. v. Multiplan, Inc., No. 08-CV-2065, 2008 WL 4615435 at *3-4 (C.D. Ill. 2008).  In Walsh, the plaintiff alleged via alternative pleadings that the defendant's conduct fell within one of the two scenarios of breach of contract or fraud.  Walsh, 752 F. Supp. 2d at 904.  The district court in Walsh concluded that the plaintiff sufficiently pled fraud and violations of RICO.  Id at 911-914.  In this case, Plaintiff has likewise alleged via alternative pleadings various breach of contract and fraud theories.  The Court concludes that, as per the discussion in Sections III and IV above, Plaintiff has sufficiently pled fraud and RICO allegations to support its "silent PPO" theory of the case.

**V.  Whether This Court Should Dismiss Plaintiff's Count VII - Unfair and Deceptive Trade Practices Claim.**

Kaiser argues that Plaintiff does not have standing to sue under Haw. Rev. Stat. § 480-2 because "only consumers have a private right of action to sue for unfair or deceptive acts or

practices." Def. Kaiser's Mtn. to Dismiss at 22 (citing Haw. Rev. Stat. § 480-2(d)). Plaintiff responds that it has standing to sue under Haw. Rev. Stat. § 480-2(a) and (e). Plntf.'s Opp. at 31.

H.R.S. § 480-2(e) states that "[a]ny person may bring an action based on unfair methods of competition declared unlawful by this section." H.R.S. § 480-2(e)(2008). Plaintiff is technically correct, but the Court concludes that Plaintiff has not sufficiently pleaded the competition requirement explained in Hawaii Medical Association v. Hawaii Medical Services Association, Inc., 113 Hawai'i 77 (2006). In Hawaii Medical Association, the Hawai'i Supreme Court stated that a plaintiff organization "may bring claims of unfair methods of competition based on conduct that would also support claims of unfair or deceptive acts or practices." 113 Hawai'i at 111. However, the court noted that "the nature of the competition must be sufficiently alleged . . . the existence of the competition is what distinguishes a claim of unfair or deceptive acts or practices from a claim of unfair methods of competition." Id at 111-12. The plaintiff in Hawaii Medical Association properly stated a claim because the complaint alleged the nature of the competition between the two health organizations. Id at 112-13.

In the Complaint before this Court, Plaintiff merely alleges that Kaiser and Stratose "operate within the healthcare

-67-

services industry" without providing any allegations as to the nature of the competition between Plaintiff and either entity. Compl. at 30-31, ¶¶ 107-110.  The Court concludes that the allegations as currently stated do not meet the pleading requirements under <u>Twombly</u> because the Complaint does not present "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." <u>Starr</u>, 652 F.3d at 1216.  In this case, the mere statement that two entities operate in the same general industry does not meet the plausibility standard in <u>Twombly</u> or provide sufficient notice to Defendants regarding the nature of the competition.  However, the Court grants Plaintiff leave to amend because Plaintiff may be able to allege facts demonstrating competition.

**VI. Whether This Court Should Dismiss Plaintiff's Count IX - Tortious Interference With Contractual Relations Claim.**

Under <u>Meridian Mortg., Inc. v. First Hawaiian Bank</u>, Plaintiff has alleged a claim for tortious interference with contractual relations.  109 Hawaiʻi 35, 44 (Haw. Ct. App. 2005). The elements for the tort are as follows:  "(1) a contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional inducement of the third party to breach the contract; (4) the absence of justification on the defendant's part; (5) the subsequent breach of the contract by the third party; and (6)

damages to the plaintiff." Id (citing Weinberg v. Mauch, 78 Hawai'i 40, 50 (1995).

In this case, Plaintiff alleges (1) the existence of a contract between Plaintiff and HMN (Compl. at 32 ¶ 115); (2) Stratose and Kaiser had knowledge of Plaintiff's contract with HMN (Compl. at 32 ¶ 116); (3) Stratose and Kaiser intentionally induced HMN to breach the contract by offering payment in exchange for an illegitimate transfer of discounts (Compl. at 32 ¶ 117); (4) Stratose and Kaiser did not have any justification for inducing the breach of contract (Compl. at 32 ¶ 117); (5) HMN breached its contract with Plaintiff (Compl. at 32 ¶ 118); and (6) Plaintiff suffered the actual loss of millions of dollars of compensation for services (Compl. at 32 ¶ 119).

Kaiser argues that Plaintiff fails to state a claim for tortious interference with contractual relations because Plaintiff "fails to allege the actual contract terms that allegedly support Queen's conclusion that Kaiser is not a "payor" entitled to participate in the HMN's network PPO." Def. Kaiser's Mtn. to Dismiss at 23.  First, Kaiser's statement is incorrect because Plaintiff does provide allegations in the Complaint as to terms in the HMN contract that prevent Stratose and Kaiser from accessing the discounts.  Compl. at 15 ¶¶ 43 – 49; 28 at ¶¶ 100-101.  Second, as noted above, Kaiser's argument is an affirmative defense that the Court declines to consider for this Motion to

Dismiss because the Court would need to consider issues of fact to resolve the defense. *Supra* Section II.D at 32-33.

**VII. Whether This Court Should Order Plaintiff to Join HMN as a Necessary Party to This Lawsuit.**

Finally, Kaiser argues that Plaintiff's Complaint should be dismissed under Rule 12(b)(7) for failure to join HMN as a party to this lawsuit. Def. Kaiser's Mtn. to Dismiss at 24.

The Ninth Circuit has set forth a three-step inquiry to determine whether a case should be dismissed under Rule 12(b)(7) for failure to join an indispensable party. E.E.O.C. v. Peabody Western Coal Co., 400 F.3d 774, 779-80 (9th Cir. 2005). First, the Court must determine if the party is a necessary party, i.e. the "nonparty should be joined under Rule 19(a)." Id at 779; See Salt River Agr. Imp. and Power Dist. v. Lee, 672 F.3d 1176, 1179 (9th Cir. 2012). Second, the Court must determine whether it is feasible to order that the absent necessary party be joined. Id. Third, if joinder is not feasible, the Court must determine "whether the case can proceed without the absentee, or whether the absentee is an "indispensable party" such that the action must be dismissed." Id. If the litigation cannot proceed without the necessary party under Rule 19(b), then the party is considered to be an indispensable party. Lyon v. Gila River Indian Cmty., 626 F.3d 1059, 1070 (9th Cir. 2010).

To address whether a party is necessary, Fed. R. Civ. P. 19 provides as follows:

(a) Persons Required to Be Joined if Feasible.

(1) Required Party.  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Regarding the first step of the analysis, HMN is a necessary party because it has an interest in at least one of the contracts at issue in this litigation - the PPO Agreement.  Under Dawavendewa v. Salt River Project Agr. Imp. and Power Dist., "a party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract."  276 F.3d 1150, 1156 (9th Cir. 2001).  Additionally, "a district court cannot adjudicate an attack on the terms of a negotiated agreement without jurisdiction over the parties to

that agreement." Clinton v. Babbitt, 180 F.3d 1081, 1088 (9th
Cir. 1999).

In this case, Plaintiff's Complaint includes a claim
for tortious interference with contractual relations, which
requires a showing that HMN, a party to the PPO Agreement,
breached the contract by improperly allowing Stratose and Kaiser
to access the discounts provided in the agreement.  Compl. at 32
¶ 118.  Plaintiff's arguments also impact the HMN-Stratose
Contract because a judgment in Plaintiff's favor would adversely
affect HMN's ability to meet the obligations of that contract.
Compl. at 15 ¶¶ 43 - 49; 28 at ¶¶ 100-101.  Accordingly, the
Court concludes that HMN is a necessary party under Rule 19(a).
See Kescoli v. Babbitt, 101 F.3d 1304, 1309-12 (9th Cir. 1996)
(holding that joinder of all parties to a settlement agreement
was necessary because challenging one term of the settlement
agreement could affect the interests of the other parties).

Regarding the second step of the analysis, both
Plaintiff and Kaiser fail to present any reason why HMN cannot
feasibly be joined.  Rule 19(a) gives three circumstances where
joinder is not feasible:  (1) "when venue is improper," (2) "when
the absentee is not subject to personal jurisdiction," and (3)
"when joinder would destroy subject matter jurisdiction."
E.E.O.C. v. Peabody Western Coal Co., 400 F.3d at 779.  Regarding
venue, Rule 19(a)(3) states that a court must dismiss a joined

party if the party objects to venue and joinder would make venue improper.  At this point, because HMN has not yet been joined, the issue of venue has not been raised.  With respect to jurisdiction, neither Plaintiff nor Kaiser indicated that HMN is not subject to service of process, and the Court concludes that the addition of HMN would not affect federal question subject matter jurisdiction.[31/]  Accordingly, the Court directs Plaintiff to join HMN.[32/]  Because neither Plaintiff nor Kaiser have established that HMN cannot be feasibly joined, the Court declines at this time to examine the third step of the analysis, i.e. whether HMN is an indispensable party and whether the action should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court:

(1) DENIES Defendant Kaiser's Rule 12(b)(6) Motion to Dismiss as to Count I - Breach of Contract Against Kaiser; Count II - Intentional Misrepresentation, Fraud, and Fraudulent Concealment Against Kaiser to the extent that this claim is based

---

[31/]  Neither party provided an explanation as to whether the addition of HMN would affect diversity jurisdiction.

[32/]  In light of Plaintiff's argument that HMN would be added as a joint tortfeasor if required to join this lawsuit (Plntf.'s Opp. at 34), it appears that HMN should be aligned with Defendants Kaiser and Stratose based on its interests of preserving its contracts and defending against tort liability. See Dolch v. United California Bank, 702 F.2d 178, 181 (9th Cir. 1983) (courts should align parties according to their interests in the litigation).

upon the August 30, 2012 letter and the Remittance Advice forms; Count III - Negligent Misrepresentation Against Defendant Kaiser to the extent that this claim is based upon the August 30, 2012 letter and the Remittance Advice forms; Count VI - Violations of RICO (18 U.S.C. §§ 1962(c) and 1964(c)) Against Kaiser and Stratose; Count IX - Tortious Interference With Contractual Relations Against Kaiser and Stratose; and Count X - Promissory Estoppel or Equitable Estoppel Against Kaiser;

(2) GRANTS Defendant Kaiser's Rule 12(b)(6) Motion to Dismiss as to Count II - Intentional Misrepresentation, Fraud, and Fraudulent Concealment Against Kaiser to the extent that this claim is based upon the oral misrepresentations, the June 20, 2012 letter, and fraudulent nondisclosure; Count III - Negligent Misrepresentation Against Kaiser to the extent this claim is based upon the oral misrepresentations and the June 20, 2012 letter; and Count VII - Unfair and Deceptive Trade Practices Against Kaiser and Stratose;

(3) DENIES Defendant Kaiser's Rule 12(b)(7) Motion to Dismiss for Failure to Join a Necessary Party;

(4) ORDERS Plaintiff to join Health Management Network, Inc. as a party to this lawsuit; and

(5) gives Plaintiff leave to file an amended complaint within thirty (30) days of the date of this Court's written order to address the rulings set forth in this order.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, May 31, 2013.



_____
Alan C. Kay
Sr. United States District Judge


<u>The Queen's Medical Center v. Kaiser Foundation Health Plan, Inc. et al.</u>, Civ.
No. 12-00565 ACK-KSC: ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT
KAISER'S MOTION TO DISMISS UNDER RULE 12(b)(6), DENYING DEFENDANT KAISER'S
MOTION TO DISMISS UNDER RULE (12)(b)(7), AND ORDER RE RULE 19 JOINDER.